ELBERT STANNARD, Impleaded, etc., Appellant, *v.* CHARLES E. HUBBELL, Impleaded, etc., Respondents.

*It seems* that judicial errors, committed by the court on the trial or decision of a cause, are, except when the judgment may be vacated therefor, to be corrected by appeal and not by an amendment of the final judgment on application to the trial court. While the court has jurisdiction to set aside and vacate its judgments in particular cases, and while it may correct merely clerical errors and mistakes in the entry thereof, or in an equity case, direct the insertion in the judgment of a provision to which the party would have been entitled, as matter of course, in connection with the relief granted; it may not, after final judgment, amend it in matter of substance for error committed on the trial, or in the decision, or so as to limit its legal effect, in order to meet some supposed equity subsequently called to its attention.

*It seems*, however, that where such an amendment has been made, the order making the amendment may not be assailed collaterally; the party aggrieved must seek his remedy by appeal from the order.

Only material, relevant and necessary facts decided in an action are conclusively determined thereby; the judgment does not operate as an estoppel in a subsequent action between the parties as to immaterial or unessential facts, even though put in issue by the pleadings and directly decided.

Plaintiff S. and defendants, H. and P., with two others whose interests have been acquired by S., entered into a contract for the purpose " of breaking up and selling the materials from ships bought from the government." The contract provided that the hulls of the ships so purchased, when stripped of all other materials, should be sold for cash. H. and P. agreed to pay a sum specified to S. as a bonus "for taking charge of the breaking up of the ships." An action was brought by H. and P. to restrain the other parties from proceeding, as they threatened to do, to sell the hulls of the ships pursuant to said agreement, on the ground that the contract had been abrogated and a new verbal agreement made between the parties providing for a different mode of disposing of the ships. In the alleged verbal contract set forth in the complaint, there was no provision for the payment of compensation to S., or any reference thereto. The defendants in that action denied the making of any new agreement, and alleged that the original contract remained in full force and effect. The trial court found that the parties never made the verbal agreement alleged, and the complaint was dismissed. In this action, brought, among other things, to compel H. and P. to pay the bonus provided for in the original contract, *held* that the question as to whether the provision had been abrogated was

not conclusively adjudicated in the former action; that the only issue necessary to be determined, in order to render final judgment therein on the merits, was as to whether the original contract had been so far abrogated as to change the mode of disposing of the hulls, and it was wholly immaterial to the determination of that question whether the compensation clause of the contract had or had not been abrogated; and that, therefore, plaintiffs were not estopped by the former adjudication.
Reported below, 56 Hun, 450.

(Argued October 26, 1890; decided December 2, 1890.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made May 12, 1890, which affirmed an order of Special Term in an equity action confirming the report of a referee, to whom, after interlocutory judgment had been entered in the action, it was referred to hear and determine whether a certain provision in a written contract, dated October 13, 1885, providing that "Hubbell and Porter (defendants) are to pay fifteen hundred dollars as a bonus to Captain Stannard (plaintiff) for taking charge of the breaking up of the ships," had been abrogated.

The referee found that the provision mentioned had been abrogated.

The general facts connected with the litigation are as follows :

In September, 1883, the parties to this action, with two other persons (whose interests were subsequently acquired by the plaintiff Stannard), bought several old ships of the government of the United States, with a view of stripping them and selling the hulls. On the 13th of October, 1883, the parties entered into a written contract for the purpose, as recited, "of breaking up and selling the materials from the ships bought from the government." The contract consisted of nine clauses.

Among other things it defined the interest of the respective parties in the adventure. Only two of the paragraphs are now material, viz.: "1st. The ships are to be stripped of all the materials, so far as practicable, in and upon them so that nothing but the bare hulls remain, the same to be sold for cash at the best market prices when ready for delivery." "3rd. Messrs. Hubbell and Porter are to pay fifteen hundred dollars

as a bonus to Captain Stannard for taking charge of the breaking up of the ships."

The substantial controversy on this appeal relates to the question whether the fact in issue on the reference in this action, viz., as to the abrogation of the compensation clause in the contract of October 13, 1883, had been adjudicated adversely to Hubbell and Porter by a judgment rendered in September, 1885, prior to the commencement of this action in a suit brought by Hubbell and Porter (the present defendants) against Stannard and others (the present plaintiffs).

It appears from the pleadings and record in that action that it was brought in March, 1885, to restrain the defendants, Stannard and others, from proceeding, as they threatened to do, to sell the hulls of the ships under and pursuant to the contract of October 13, 1883, on the ground that that contract had been abrogated and a new verbal agreement made between the parties, the terms of which are stated, providing, among other things, for a different mode of disposing of the ships than was provided for in the original contract, that is to say, that instead of being sold as bare hulls after being stripped as provided by the first contract, they should be broken up and the material sold for the benefit of the parties interested.

The complaint sets out in *hæc verba* the contract of October 13, 1883, and alleges that it was understood and agreed between the parties that that contract "should be and was canceled" and a new contract substituted therefor. The new verbal contract set forth, covers many of the particulars embraced in the original contract, but contains no compensation clause as did the original contract, nor any equivalent clause, making no reference whatever thereto, except what may be implied from the making of a new contract in substitution for the original one, which omits any provision on the subject.

The defendants in that action in their answer put in issue the allegations of the complaint in respect to the new and substituted contract, deny that any new verbal agreement was ever made, and allege that the contract of October 13, 1883,

" still remains in full force and effect and has never been can-
celed or modified in any respect," and they aver, in substance,
that the mode in which the ships are to be disposed of is
governed by the provision in that contract. The trial judge,
after hearing the evidence, dismissed the complaint on the
merits, with costs to the defendants, and vacated the receiver-
ship procured on the application of the plaintiffs and judg-
ment in conformity with his decision, adjudging " that the
plaintiffs were not entitled to any relief in the action " was
entered in September, 1885. The trial judge made findings of
fact and law. The first, second and third findings of fact are
as follows : " *First.* That on the 20th, 22d and 23d of Octo-
ber, 1883, there were negotiations between the parties to this
action as to canceling the agreement of October 13, 1883, set
forth in the complaint and as to making some new arrange-
ment between them in reference to the future sale or other
disposition of the vessels referred to in the agreement. *Second.*
That there was never any definite agreement on the subject
of the new agreement referred to in the last finding of fact,.
and the minds of the parties never met on the terms of such
proposed new agreement. *Third.* That the plaintiffs and the
defendants never did make the verbal agreement alleged in
the complaint to have been made on or about October 13,
1885." There was no express finding as to the compensation
clause in that contract, or whether it had or had not been
abrogated. The evidence on which the judgment proceeded
(with certain fragmentary exceptions) does not appear. Hub-
bell and Porter appealed from the judgment to the General
Term, where it was affirmed January 27, 1887. Subsequently,
in June, 1887, a motion was made upon affidavits by the
plaintiffs, upon notice to the defendants, at Special Term,
before the judge who tried the cause, to amend the original
judgment, whereupon the following order was made : " It is
ordered that the judgment and findings in this action be and
the same are hereby amended by adding thereto the following
clause : It is further ordered and adjudged that the complaint
herein be dismissed without determining the question, whether

or not the clause of the contract of October 13, 1885, requiring the payment of $1,500 by the plaintiff herein to the defendant Stannard, was or was not abrogated, and without prejudice to either party asserting or denying such abrogation in any other action." The papers on which this order was granted are not contained in the record. There has been no appeal taken from the order.

The points taken by the appellant are, *first*, that the judgment in the action brought by Hubbell and Porter conclusively adjudicated against them the fact litigated before the referee in this action, and determined that the compensation clause in the contract of October 13, 1883, had not been abrogated; *second*, that the order of June, 1887, amending the judgment by which it sought to deprive the plaintiffs here of the benefit of the estoppel of the judgment on this point was unauthorized and void.

*A. R. Dyett* for appellant. By the decision and judgment in the Onondaga action, it was *res adjudicata* that the $1,500 clause in question had never been abrogated. (*LeGuen* v. *Gouvernor*, 1 Johns. Cas. 436; 14 Johns. 63; 1 Johns. Ch. 91; *Southgate* v. *Montgomery*, 1 Paige, 41; *Bruen* v. *Howe*, 2 Barb. 586; *Harris* v. *Harris*, 36 id. 88; 574; *Davis* v. *Talcott*, 12 N. Y. 184, 188, 189; *Jordan* v. *Van Epps*, 85 id. 427, 434, 435; *Church* v. *Kidd*, 88 id. 652, 653, 654; *Kamp* v. *Kamp*, 59 id. 216; *Tuska* v. *O'Brien*, 68 id. 446, 449; *Maloney* v. *Horan*, 49 id. 116; *Embury* v. *Connor*, 3 id. 511, 522; *Haire* v. *Baker*, 5 id. 357; *Hayes* v. *Rees*, 34 Barb. 151, 156; *Goodsell* v. *W. U. T. Co.*, 23 J. & S. 173; *Martha* v. *Curley*, 90 N. Y. 372; *Doty* v. *Brown*, 4 id. 71.) The respondents claim that, by the order made in the Onondaga action on the 25th day of June, 1887, after judgment entered, and after its affirmance at General Term, adding the new provision to it, the question whether the $1,500 clause was abrogated ceased to be *res adjudicata* by the judgment in that action is untenable. (Code Civ. Pro. § 2481, subd. 6; Seton on Decrees, 15; 2 Daniel's Ch. Pl. &

Pr. [3 Am. ed.] 1450, 1453 ; *Fisher* v. *Hepburn*, 48 N. Y. 53, 56 ; *Schaetler* v. *Gardiner*, 47 id. 404 ; *Dang* v. *Howe*, 13 id. 306, 308 ; *Knapp* v. *Post*, 10 Hun, 35 ; *Genet* v. *D. & H. C. Co.*, 113 id. 475.) The respondents also claim that by the order in this action on the 10th day of September, 1887, and after judgment entered therein, the same effect is produced. This is equally untenable. (*Bostwick* v. *Abbott*, 16 Abb. Pr. 419.) The respondents contend that the order of reference was made by consent of the appellant, and that, therefore, he cannot avail himself of the judgment in the Onondaga action, nor of the judgment in this action as a former adjudication upon the question referred, nor claim that that question is *res adjudicata* by either of those judgments. This is a fallacy. (*Krekler* v. *Ritter*, 62 N. Y. 372, 374 ; *Marston* v. *Sweet*, 66 id. 211 ; *Embury* v. *Conner*, 3 id. 522.) Upon the merits, on the law and the facts, the referee erred in deciding that the $1,500 clause in the contract of October 13, 1883, had been abrogated. (*Ripley* v. *A. Ins. Co.*, 30 N. Y. 164 ; 23 Wend. 306, 309 ; *Kelly* v. *Burroughs*, 102 N. Y. 93 ; *McNulty* v. *Prentice*, 25 Barb. 207 ; *Dana* v. *Munro*, 38 id. 534 ; *Dietz* v. *Farrish*, 79 N. Y. 520 ; *Hough* v. *O'Brien*, 19 id. 111, 114; *Pease* v. *Smith*, 61 id. 482; *Gordon* v. *People*, 33 id. 508 ; *People* v. *Sharp*, 107 id. 465.)

*William G. Tracy* for respondents. The appellant having consented to the reference under the amendment, is precluded from assailing it. (*Strong* v. *Jones*, 25 Hun, 319 ; *Porter* v. *Parmly*, 6 J. & S. 490 ; *Tanssig* v. *Hart*, 1 id. 157 ; *Collyer* v. *Collyer*, 24 Wkly. Dig. 74 ; Code Civ. Pro. § 1011.) The former adjudication in the action tried in Onondaga county, is not a bar to the recovery had by the respondent, because the subject-matter thereof was not the same. (*O'Dougherty* v. *R. P. Co.*, 81 N. Y. 496 ; *Bell* v. *Merrifield*, 109 id. 202 ; *Marsh* v. *Masterton*, 101 id. 401 ; *Hymes* v. *Estey*, 116 id. 501; *Beveridge* v. *N. Y. E. C.*, 112 id. 1; *Gilman* v. *Healy*, 46 Hun, 310 ; *Lorillard* v. *Clyde*, 99 N. Y. 196 ; *Belden* v. *State*, 103 id. 1 ; *Perry* v. *Dickerson*, 85 id. 345 ; *People*

*ex rel.* v. *Johnson*, 38 id. 63 ; 3 Cow. & Hill's Notes, 826 ; *Hawley* v. *Singer*, 5 Den. 82 ; *Candee* v. *Burke*, 4 T. & C. 143 ; *Matthews* v. *Duryee*, 45 Barb. 69 ; *Palmer* v. *Hussey*, 87 N. Y. 303 ; *Emery* v. *Wilson*, 79 id. 78.) The judgment in the action brought in Onondaga county is not a bar to the recovery here because the parties are not the same. (*Emery* v. *Wilson*, 79 N. Y. 78.) Neither of the former judgments are a bar to this recovery because there is no finding of fact in the case that any such judgments were ever rendered or any request to so find. (*Woodhull* v. *Rosenthal*, 61 N. Y. 382; *Everson* v. *City of Syracuse*, 100 id. 577; Code Civ. Pro. §§ 1011, 1023.) The court properly directed the defeated party to pay the disbursements of the reference. (Code Civ. Pro. §§ 1011, 1015, 3236.)

ANDREWS, J. If the amendment of the judgment in the former action changed the legal effect of the judgment as an estoppel upon the point involved in the present controversy, and it was necessary now to determine the question of the power of the court at Special Term to make the order of June 25, 1887, the question would perhaps be found to turn upon the point whether the amendment was made to correct an error on a reconsideration in the nature of a review of the decision rendered, or was made simply to conform the judgment to the decision actually rendered, but which, when formulated, failed, through mistake or inadvertence, to express the intention of the court.

The power of a court of original jurisdiction to set aside and vacate its judgments in particular cases is a part of its inherent and recognized jurisdiction, and in many cases is regulated by statute. When exercised, the parties are remitted to the position they occupied before the judgment was rendered, and the case stands again for trial or for such other disposition as may be appropriate to the situation. But judicial errors committed by a judge on the trial or decision of a cause are, under our system (except when a judgment may be vacated therefor), to be corrected by appeal and not

by an amendment of the final judgment on application to the trial court. The trial judge has no revisory or appellate jurisdiction to correct by amendment errors in substance affecting the judgment. He may correct merely clerical errors or a mistake in the entry of judgment, or, as has been held in equity cases, direct the insertion in the judgment of a provision to which the party would have been entitled as matter of course in connection with the relief granted. (*Clark* v. *Hall*, 7 Paige, 382; *Sprague* v. *Jones*, 9 id. 395.) But it would seem to be inconsistent with principle that a trial court, after its function has been terminated by an award of final judgment, should then be permitted to amend the judgment in matter of substance for error committed on the trial or in the decision, or by amendment to limit the legal effect of the judgment to meet some supposed equity subsequently called to its attention. (See *Genet* v. *Prest., etc., D. & H. C. Co.*, 113 N. Y. 472; Freeman on Judgments, § 70, and cases cited.)

Assuming that the amendment by the order of June 25, 1887, was an amendment changing the judgment in matter of substance, nevertheless the appellant, in questioning the validity of the order on this appeal, encounters the difficulty that he has not appealed therefrom, and, also, that the record does not contain the papers upon which the order was based. We cannot assume that it did not proceed upon some ground consistent with the power and jurisdiction of the court. We are also inclined to think that even if it appeared that the amendment was in matter of substance the order is not void in the sense that it can be assailed collaterally, but that the party aggrieved must seek his remedy by direct appeal from the order itself. (See opinion of DENIO, J., *Audubon* v. *Excelsior Ins. Co.*, 27 N. Y. 221.) But in view of our conclusion as to the effect of the original judgment as an estoppel upon the point litigated in this action, it is unnecessary to take notice of the order amending it.

The transaction by which it is alleged by the respondents the compensation clause in the contract of October 13, 1883, was abrogated, took place prior to the commencement of the

former action, and if the question was adjudicated therein the respondents are concluded, and the question was not open for re-examination in this action. We are, however, of opinion that the question whether the compensation clause in the contract of October 13, 1883, had been abrogated, was not adjudicated by the judgment in the former action. That action was brought for a specific and distinct purpose, viz. : to procure a judgment of the court directing that the vessels, which were the subject of the joint adventure, should be broken up and the materials sold for the benefit of the parties interested. The plaintiffs in that suit (Hubbell and Porter) alleged in their complaint that the contract of October 13, 1883, had been cancelled by virtue of a verbal agreement between the parties, the terms of which were set out, one of which was that the vessels should be broken up and not sold as provided in the original contract. The relief demanded was that the defendants should be restrained from proceeding to sell the vessels under the original contract, as they threatened to do, and for the appointment of a receiver. The compensation clause in the contract of October 13, 1883, does not appear among the terms of the verbal contract as set forth in the complaint in the former action, and, as recited, it contains no provision whatever on the subject. The defendants, in their answer in that action, among other things, specifically denied that the parties entered into the new verbal agreement alleged in the complaint therein, and they alleged that "the written agreement of the 13th of October, 1883, still remains in full force and effect, and has never been cancelled and modified in any respect." The answer further denied the grounds for equitable relief alleged in the complaint, and insisted that the rights of the parties were governed by the original contract. The findings of the court in the former action, the relief granted and the terms of the judgment are set forth in the preliminary statement.

In respect to the estoppel of judgments, the principle announced by Lord Chief Justice DEGREY in the *Duchess of Kingston's* case, "that neither the judgment of a concurrent

or exclusive jurisdiction is evidence of any matter which came collaterally in question, though within the jurisdiction, nor of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment" has been uniformly accepted by courts as an accurate statement of the law. Of course, a judgment *in personam* is not an estoppel in any case, except where, as is expressed by the same learned judge, it is "between the same parties, upon the same matter, clearly in question in another court," privies standing as parties within the rule declared. There is frequently, however, great difficulty in applying the rule and in determining what was the matter in issue in the former action, the identity of the questions involved with those subsequently arising, and where the estoppel claimed is in respect of some fact involved in the former action, whether the particular fact found or adjudged was essential and material to the judgment rendered, for only material, relevant and necessary facts decided in a former action are conclusively determined thereby. The judgment does not operate as an estoppel as to immaterial or unessential facts, even though put in issue by the pleadings and directly decided. (*Campbell* v. *Consalus,* 25 N. Y. 613; *People ex rel. Reilly* v. *Johnson,* 38 id. 63; *Woodgate* v. *Fleet,* 44 id. 1; *Sweet* v. *Tuttle,* 14 id. 465.)

It is obvious from an inspection of the record in the former action that the only issue necessary to be determined, in order to render a final judgment therein on the merits was, whether the contract of October 13, 1883, had been abrogated so far as to provide for a breaking up of the vessels and a sale of the materials, in lieu and place of the disposition of the vessels by sale as therein provided. It was wholly immaterial to the determination of the crucial question in the case, whether the contract of October 13, 1883, in respect of its other provisions had been abrogated or not. It is true that by the pleadings that question was in a certain sense in issue. But this was only for the reason that the plaintiffs in presenting their claim, that a new mode of disposing of the vessels had been agreed upon, alleged that a new and complete contract in substitution

for the original one had been made, which provided for a different disposition from that before agreed upon, and on inspection of the terms of the alleged new contract nothing appears therein relating to any compensation to Stannard. It may be said, therefore, that the plaintiffs impliedly alleged that the provision for the compensation in the original contract had been cancelled, although there was no express reference to that provision. But it was unnecessary for the plaintiffs in that suit, in order to establish their right to the relief claimed, to prove the averment as to the abrogation of the original contract to its full extent. The substantial issue, as has been stated, was whether that contract had been abrogated as to the mode of disposing of the vessels and a new mode substituted. It cannot be doubted that under the present rules of pleading, proof that the contract had been altered in that respect alone would have sustained the complaint. The failure to prove the broader allegation that the contract had been wholly cancelled would have been an immaterial variance. The compensation clause had no bearing upon the point then in controversy. No relief was asked in respect thereto, and none could have been granted upon the issue framed. The estoppel here is sought to be raised upon the judgment record alone. The evidence in the former action, except detached fragments, is not before us. What was the actual course of the trial, what was sought to be proved on the one side or the other, and how the parties dealt with the issue in the case does not appear.

When the findings are examined it is quite apparent that the actual adjudication was confined to the point whether the contract of October 13, 1883, had been altered in respect to the material point in issue, to wit, the mode of disposing of the vessels. Construing the second and third findings of fact together they are to the effect that no new agreement was made "in reference to the future sale or other disposition of the vessels." It is true that the judge further found that the parties never made the verbal agreement alleged in the complaint, but this was true if they did not make that part of it relating to the disposition of the vessels, although they may have

altered or abrogated the compensation clause. Certainly there is no certain and incontrovertible inference to be drawn from the findings and judgment that the particular fact now in controversy was then decided, and that must appear before the judgment can operate as an estoppel or adjudication. The judgment rendered in the former action is not inconsistent with the claim now made that the compensation clause in the contract of October 13, 1883, had been abrogated prior to the commencement of the former action. The evidence produced on the trial of this action that there was an agreement between the parties, founded upon a consideration, to waive and discharge the compensation clause in the contract of October 13, 1883, would not have sustained or tended to sustain the material issue in the former action, nor, as we have said, could the same relief have been had under the pleadings in the first action as was demanded in this action. These are tests of the estoppel of a former adjudication. (*Miller* v. *Manice,* 6 Hill, 114 ; *Stowell* v. *Chamberlain,* 60 N. Y. 272 ; *Kerr* v. *Hays,* 35 id. 331 ; Bigelow on Estoppel, 84.)

The essential fact determined in the former action that no new agreement for the disposition of the vessels was made, the parties can never dispute. Whenever the same question arises between them, in whatever form of action, and whether involved directly or collaterally, they are forever precluded from averring and proving the fact to be otherwise. But this, we think, is the extent of the adjudication as evidence. It is final as to the immediate purpose and object of that action and as to every fact litigated and decided therein, having such a relation to the issue that its determination was necessary to the determination of the issue. We need not go further in order to determine the present appeal. There is great diversity of opinion as to the scope of a former adjudication, and how far facts introduced and litigated, for the purpose of aiding in the adjudication of the ultimate fact to be found, are themselves adjudicated by the final judgment. (See Bigelow on Estoppel, 158 and cases cited.) A very interesting discussion upon that subject may be found in the opinions of V.

C. BRUCE, in *Barrs* v. *Jackson* (1 Y. & C. 585), and of Chief Justice PARKER, in *King* v. *Chase* (15 N. H. 9), which, however, seem to limit the effect of the estoppel of a former adjudication more closely than is sanctioned by the general current of judicial opinion.

Our conclusion is that the question of the abrogation of the compensation clause in the contract of October 13, 1883, was not *res adjudica,* by the findings or judgment in the suit of Hubbell and Porter or by the interlocutory judgment rendered in the present case. (See *Webb* v. *Buckelew,* 82 N. Y. 555.)

The order should, therefore, be affirmed.

All concur, except RUGER, Ch. J., not voting.

Order affirmed.